Case 4:19-cv-00037-MFU-JCH   Document 28   Filed 08/05/21   Page 1 of 13
Pageid#: 698

CLERKS OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

AUG 05 2021

JULIA C. DUDLEY, CLERK
BY: s/ H. MCDONALD
     DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Danville Division

| | | |
|---|---|---|
| JEFFREY B.,[1] | ) | |
|     Plaintiff, | ) | Civil Action No. 4:19-cv-00037 |
| | ) | |
| v. | ) | REPORT & RECOMMENDATION |
| | ) | |
| KILOLO KIJAKAZI, | ) | By:   Joel C. Hoppe |
| Acting Commissioner of Social Security, | ) |         United States Magistrate Judge |
|     Defendant.[2] | ) | |

Plaintiff Jeffrey B. asks this Court to review the Commissioner of Social Security's final decision denying his claims for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401–434, and supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–1383f. The case is before me by referral under 28 U.S.C. § 636(b)(1)(B). ECF No. 12. Having considered the administrative record, the parties' briefs and oral arguments, and the applicable law, I cannot find that substantial evidence supports the Commissioner's denial of benefits. Accordingly, I respectfully recommend that the presiding District Judge reverse the decision and remand the case under the fourth sentence of 42 U.S.C. § 405(g).

I. Standard of Review

The Social Security Act authorizes this Court to review the Commissioner's final decision that a person is not entitled to disability benefits. 42 U.S.C. §§ 405(g), 1383(c)(3); *see also Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006). The Court's role, however, is

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2] Acting Commissioner Kijakazi is hereby substituted as the named Defendant in this action. Fed. R. Civ. P. 25(d).

limited—it may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of agency officials. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). Instead, a court reviewing the merits of the Commissioner's final decision asks only whether the Administrative Law Judge ("ALJ") applied the correct legal standards and whether substantial evidence supports the ALJ's factual findings. *Meyer v. Astrue*, 662 F.3d 700, 704 (4th Cir. 2011); *see Riley v. Apfel*, 88 F. Supp. 2d 572, 576 (W.D. Va. 2000) (citing *Melkonyan v. Sullivan*, 501 U.S. 89 (1991)).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is "more than a mere scintilla" of evidence, *id.*, but not necessarily "a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Substantial evidence review considers the entire record, and not just the evidence cited by the ALJ. *See Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487–89 (1951); *Gordon v. Schweiker*, 725 F.2d 231, 236 (4th Cir. 1984). Ultimately, this Court must affirm the ALJ's factual findings if "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam). However, "[a] factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A person is "disabled" within the meaning of the Act if he or she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Social Security ALJs follow a five-step process to determine whether a claimant

2

is disabled. The ALJ asks, in sequence, whether the claimant (1) is working; (2) has a severe medical impairment that satisfies the Act's duration requirement; (3) has an impairment that meets or equals an impairment listed in the Act's regulations; (4) can return to his or her past relevant work based on his or her residual functional capacity; and, if not (5) whether he or she can perform other work existing in the economy. *See Heckler v. Campbell*, 461 U.S. 458, 460–62 (1983); *Lewis v. Berryhill*, 858 F.3d 858, 861 (4th Cir. 2017); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).[3] The claimant bears the burden of proof through step four. *Lewis*, 858 F.3d at 861. At step five, the burden shifts to the agency to prove that the claimant is not disabled. *See id.*

## II. Procedural History

In December 2015, Jeffrey filed for DIB and SSI alleging that he had been unable to work since October 23, 2011, because of back problems, chest pain and shortness of breath, low back pain, status post back surgery, right shoulder rotator cuff injury, limited use of right arm and hand, coronary artery disease, cataract in left eye with blurred vision, depression, and suicide attempt. *See* Administrative Record ("R.") 82, 95, 222–23, 224–32, 260, ECF No. 10-1.[4] Jeffrey was forty-five years old, or a "younger person" under the regulations, on his alleged onset date. R. 81, 94, 222, 224; 20 C.F.R. §§ 404.1563(c), 416.963(c). Disability Determination Services ("DDS"), the state agency, denied Jeffrey's claims initially in March 2016, R. 81–92, 94–105, and upon reconsideration that August, R. 108–22, 123–37. On January 19, 2018, Jeffrey appeared with counsel and testified at an administrative hearing before ALJ Theodore W. Annos.

---

[3] Unless otherwise noted, citations to the Code of Federal Regulations refer to the version in effect on the date of the ALJ's written decision.

[4] Jeffrey filed previous applications for disability in October 2011. R. 15. Those applications were denied, and Jeffrey was found not disabled through June 19, 2014. R. 68–76. On appeal, this court affirmed the Commissioner's final decision. *Jeffrey B. v. Berryhill*, No. 4:15cv57 (W.D. Va.), Opinion & Order, ECF Nos. 26,27.

3

*See* R. 32–64. A vocational expert ("VE") also testified at this hearing. R. 57–63.

The ALJ issued an unfavorable decision on September 6, 2018. R. 15–26. He first found that Jeffrey had not worked since October 2011, and that he met the Act's insured-status requirements through December 31, 2016.[5] R. 18. At step two, he found that Jeffrey had "severe" medical impairments of heart disease, hypertension, hyperlipidemia, right shoulder disorder, obesity, and affective disorder *Id.* His other medical conditions, including personality disorder and status-post gunshot wound, were non-severe impairments during the relevant time. *Id.* Jeffrey's severe impairments did not meet or medically equal the relevant Listings. R. 19–20 (citing 20 C.F.R. pt. 404, subpt. P, app. 1 §§ 1.02, 4.00H1, 4.04, 12.04; SSR 02-1p). Jeffrey's mental impairments caused "moderate limitations" in understanding, remembering, or applying information; interacting with others; concentrating, persisting, and maintaining pace; and adapting or managing himself. R. 19–20.

The ALJ then evaluated Jeffrey's residual functional capacity ("RFC"). R. 20. He could perform "light work"[6] that involved occasionally climbing, stooping, kneeling, crouching, and crawling; frequent balancing and reaching; and frequent exposure to work hazards and extreme environmental conditions. *Id.* He could perform "simple and routine tasks that require only simple instructions and simple decisions; tolerate occasional changes in the work setting or tasks

---

[5] The latter date is called the date last insured, or "DLI." *See Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 339 (4th Cir. 2012). To qualify for DIB, a claimant must prove that he or she became disabled prior to the expiration of his or her insured status. *Johnson*, 434 F.3d at 655–56. The DLI is not relevant to a claim for SSI. See Redditt v. Colvin, No. 7:13cv391, 2014 WL 2800820, at *4 n.3 (W.D. Va. June 18, 2014); 20 C.F.R. §§ 416.202, 416.501.

[6] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b). A person who can meet these relatively modest strength requirements can perform "[t]he full range of light work" only if he or she can also "stand or walk for up to six hours per workday or sit 'most of the time with some pushing and pulling of arm or leg controls.'" *Neal v. Astrue*, Civ. No. JKS-09-2316, 2010 WL 1759582, at *2 (D. Md. Apr. 29, 2010) (quoting 20 C.F.R. § 404.1567(b)); SSR 83-10, 1983 WL 31251, at *5–6 (Jan. 1, 1983).

to be performed; []have occasional interaction with others, but no tandem work assignments; and [] work for two hour intervals and then require a five to ten minute break between intervals." *Id.* This RFC precluded Jeffrey's return to his past work as a timber cutter. R. 24. Based on the VE's testimony, the ALJ found that Jeffrey could perform certain light, unskilled occupations (laundry worker, housekeeper, stock clerk) that offered a significant number of jobs in the national economy. R. 24–25. Thus, the ALJ concluded that Jeffrey was not disabled at any time after October 26, 2011. R. 22. The Appeals Council declined to review that decision, R. 1–3, and this appeal followed.

## III. Discussion

Jeffrey argues that the ALJ did not properly consider his impairment-related mental limitations or explain how he assessed the RFC. Pl.'s Br. 14–22, ECF No. 20. Jeffrey also asserts that the ALJ did not properly assess his physical RFC or explain whether the limitation to working in two-hour increments with breaks in between addressed Jeffrey's mental or physical limitations. *Id.* at 22–24. Lastly, Jeffrey contends the ALJ improperly addressed his report of symptoms and limitations. *Id.* at 24–27. I find Jeffrey's first argument persuasive and, thus, do not address his other arguments as the Commissioner will need to reassess Jeffrey's RFC on remand.

\*

A claimant's RFC is his "maximum remaining ability to do sustained work activities in an ordinary work setting" for eight hours a day, five days a week (or equivalent schedule) despite his medical impairments and related symptoms. SSR 96-8p, 1996 WL 374184, at \*2 (July 2, 1996) (emphasis omitted). The Commissioner "has specified the manner in which an ALJ should assess a claimant's RFC." *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019). First, because

5

RFC is by definition "a function-by-function assessment based upon all of the relevant evidence of [the claimant's] ability to do work related activities," SSR 96-8p, 1996 WL 374184, at *3, the ALJ must identify each impairment-related functional restriction that is supported by the record, *see Monroe v. Colvin*, 826 F.3d 17, 179 (4th Cir. 2016). The RFC itself should reflect specific, credibly established "restrictions caused by medical impairments and their related symptoms" that affect the claimant's "capacity to do work-related physical and mental activities" on a regular and continuing basis, SSR 96-8p, 1996 WL 374184, at *1, *2. *See Mascio v. Colvin*, 780 F.3d 632, 637–40 (4th Cir. 2015) (restrictions identified at step three); *Reece v. Colvin*, 7:14cv428, 2016 WL 658999, at *6–7 (W.D. Va. Jan. 25, 2016) (restrictions identified at step two), *adopted by* 2016 WL 649889 (W.D. Va. Feb. 17, 2016). Second, the ALJ's decision must include a "narrative discussion describing" how specific medical facts and non-medical evidence "support[] each conclusion" in the RFC assessment, SSR 96-8p, 1996 WL 374184, at *7, and logically explaining how he weighed any conflicting or inconsistent evidence in arriving at those conclusions, *Thomas*, 916 F.3d at 311. Generally, a reviewing court will affirm the ALJ's RFC findings when he considered all the relevant evidence under the correct legal standards, *see Brown v. Comm'r of Soc. Sec. Admin.*, 873 F.3d 251, 268–72 (4th Cir. 2017), and built an "accurate and logical bridge from that evidence to his conclusion[s]," *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018). *See Thomas*, 916 F.3d at 311–12; *Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 662–63 (4th Cir. 2017).

\*\*

Here, at step two, the ALJ found Jeffrey's affective disorder was a severe medically determinable impairment because it "significantly limit[ed his] ability to perform basic work activities," R. 17; *see* R. 18, which, according to the regulations, include things like

understanding, remembering, and following "simple instructions," exercising judgment, responding appropriately to supervision, co-workers, and usual work situations, and dealing with changes in a routine work setting, 20 C.F.R. §§ 404.1522(b)(3)–(6), 416.922(b)(3)–(6). At step three, the ALJ determined that Jeffrey's mental impairment caused moderate limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, and maintaining pace; and adapting or managing himself. R. 19–20. As support for these findings, the ALJ noted that Jeffrey reported some trouble reading, but could read the Bible; had good judgment and insight; had normal memory, intellectual functioning, mood and affect (recently), and attention and concentration; and was active in church, visited family, attended Alcoholics Anonymous meetings, went to movies, and cooked. R. 19–20 (citing R. 336, 345, 388, 431, 435, 443, 448, 455–56, 561, 566, 571, 585–87).

Assessing Jeffrey's RFC, the ALJ noted that Jeffrey testified that he had chest pain, depression, and fatigue; he had a limited ability to sit and stand and had to lie down three times a day because of fatigue; and he had difficulty performing chores consistently. R. 21. Jeffrey testified that his daily activities involved driving to the store, walking to the mailbox, playing games on his phone, and watching television. R. 40, 45, 47. He went to church weekly, but he did not sit with others. R. 44, 53. He did not like to be around others. R. 53. He did not cook or do chores or yardwork. R. 44–45. His depression made him feel like he could not do anything. R. 53. Jeffrey was fatigued, and he had trouble concentrating because he was easily distracted. R. 55–56.

The ALJ found that Jeffrey's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that Jeffrey's "statements concerning the intensity, persistence and limiting effects of these symptoms" were "not entirely consistent with the

medical evidence and other evidence in the record for the reasons explained in [the ALJ's] decision." R. 21. The ALJ then summarized some of the medical records and the medical opinions of the DDS psychologists.

On August 7, 2014, Jeffrey shot himself in the right thigh after arguing with his girlfriend. R. 335. He was evaluated for psychiatric admission to the Martinsville Memorial Hospital Emergency Room on a temporary detention order. *Id.* Jeffrey explained that he had been drinking moonshine, which he consumed daily, and he said he wanted attention and help because he had not worked since 2011. *Id.* Mental examination revealed mostly normal findings except Jeffrey's insight was "somewhat limited." R. 336. The admitting psychiatrist diagnosed alcohol dependence, adjustment disorder with depressed symptoms, and antisocial personality disorder. R. 337. Jeffrey remained in the psychiatric unit until August 19. R. 338. He participated in psychological treatment and substance abuse counseling, and he was prescribed Neurontin. R. 339. He was discharged with instructions to follow-up with substance abuse and psychiatric treatment arranged though the Piedmont Community Services Board ("Piedmont CSB"). R. 340.

On September 4, 2014, Jeffrey had an intake appointment with Ronald Mills, QMHP, R. 430–34, and a psychiatric evaluation with Don Tessman, M.D., R. 435–36, at Piedmont CSB. Dr. Tessman assessed Jeffrey "with longstanding issues of alcohol abuse with his now describing more depression with there being clear situational influences." R. 435. Exam findings were otherwise normal. *Id.* He diagnosed mood disorder not otherwise specified, alcohol abuse, and personality disorder not otherwise specified. *Id.* He prescribed Neurontin and Celexa. R. 436. On October 6, Dr. Tessman noted that Jeffrey had fair judgment and insight and a depressed mood; his other exam findings were normal. R. 449–50. He increased Celexa and scheduled a follow-up appointment in three months. R. 450–51. Jeffrey also participated in group substance abuse

counseling at the Piedmont CSB beginning in September and successfully completed counseling in December 2014. R. 437–48, 455-82. Jeffrey continued with aftercare, R. 483–84, and Alcoholics Anonymous meetings, R. 488. Jeffrey requested and participated in anger management counseling in January and February 2015. R. 489–97.

From January 2015 through August 2016, Jeffrey had appointments at Piedmont CSB for medication management for depression, during which psychiatric assessments showed Jeffrey had logical thought process, intact associations, "fair" insight and judgment, normal mood and effect, and no memory or concentration problems. R. 485–88 (January 2015), 498–501 (April 2015), 509–12 (May 2015), 515–18 (June 2015), 519–22 (September 2015), 525–28 (December 2015), 533–36 (April 2016), 557–61 (August 2016); *see also* R. 569–73 (June 2017). His prescriptions for Celexa and Neurontin, R. 487–88, were discontinued because of an allergic reaction, and he was prescribed Wellbutrin, R 500. At an appointment in March 2017, Jeffrey reported feeling angry when people talked about him and having a temper tantrum. R. 564. He said he did well on his medications. *Id.* Psychiatric examination showed that Jeffrey occasionally appeared suspicious and lacked insight and judgment, but other findings were normal. R. 566. In June, Jeffrey said he had been doing well and his mood was stable. R. 569. Over the course of his treatment, he remained on Wellbutrin and at times was prescribed Quetiapine, R. 527, Omeprazole, R. 535, and Mirtazapine, R. 559.

As to the medical opinions, the ALJ gave "great weight" to the opinion of DDS psychologist Joseph Leizer, Ph.D., because he concluded it was consistent with treatment notes and objective mental findings. R. 23. Dr. Leizer found that Jeffrey had a severe medically determinable affective disorder that caused moderate difficulty in maintaining social functioning and concentration, persistence, or pace. R. 114–15. Additionally, Dr. Leizer determined that

9

Jeffrey was moderately limited in his abilities to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods, work in coordination with or proximity to others without being distracted by them; and interact with the public, accept instructions and respond appropriately to criticism from supervisors, and get along with coworkers or peers without distracting them or exhibiting behavioral extremes. R. 119–20.

First, Jeffrey argues that the ALJ did not explain how the RFC's limitations reflected his findings at step three that Jeffrey's severe mental impairments caused "moderate" limitations in sustaining concentration and persisting in tasks, interacting with others, understanding and applying information, and adapting or managing himself. Binding precedent makes clear that an ALJ who at step three finds a "moderate" limitation maintaining concentration, persistence, or pace ("CPP") must either specifically account for that work-related limitation in the RFC finding or explain why such a restriction is unnecessary. *Mascio*, 780 F.3d at 638; *cf. Patterson*, 846 F.3d at 659 (noting that the "RFC assessment is a holistic and fact-specific evaluation" and "the ALJ cannot conduct it properly without reaching detailed conclusions" at steps two and three about the "type and severity of the claimant's [mental] impairments"); *Claiborne v. Comm'r, Soc. Sec. Admin.*, Civ. No. SAG-14-1918, 2015 WL 2062184, at *4 (D. Md. May 1, 2015) ("The conclusions at step [three] are supposed to represent reasoned consideration of all of the pertinent evidence, and are not simply an opportunity to give the claimant the benefit of the doubt at one step while taking it away at the next step.").

Merely restricting the claimant to "simple, routine tasks or unskilled work," without additional explanation, is not sufficient because "the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Mascio*, 780 F.3d at 638 (internal quotation marks omitted).

10

Similarly, an ALJ does not necessarily account for such limitations by reducing the claimant's interaction with other people or by restricting him to a "occasional changes in the work setting or tasks to be performed," R. 20. *See, e.g.*, *Seymour v. Berryhill*, No. 3:16cv62, 2017 WL 908213, at *3–4 (W.D. Va. Mar. 6, 2017) (reversing and remanding under *Mascio* where ALJ failed to explain how RFC limiting claimant to "simple, routine and repetitive tasks; . . . a static work environment where changes in tasks are infrequent and explained when they do occur; and occasional contact with the public, supervisors and coworkers" reflected ALJ's finding that "moderate" limitations maintaining CPP). Rather, the ALJ's decision must include a narrative discussion, citing relevant evidence in the record, *explaining* either how the RFC accommodates the ALJ's finding that the claimant's mental impairment(s) cause "moderate" overall limitations sustaining CPP or why, notwithstanding that prior finding, this moderate limitation "does not affect" the claimant's ability to "stay on task" for a full workday and normal workweek. *Mascio*, 780 F.3d at 638; *see, e.g.*, *Lonie B. v. Comm'r of Soc. Sec. Admin.*, No. DLB-19-1424, 2020 WL 2097683, at *4 (D. Md. May 1, 2020) (remanding under *Mascio* where ALJ discussed relevant medical evidence, but "offered no explanation as to why Plaintiff's issues with concentration and persistence did not affect his ability to sustain work over an eight-hour workday"); *Mark T. v. Berryhill*, No. CBD-18-0513, 2019 WL 2250575, at *4 (D. Md. May 23, 2019) (ALJ's "detailed explanation of the evidence in the record" was insufficient where ALJ failed to explain whether the mental RFC's specific limitations adequately addressed claimant's moderate limitation in CPP).

      Here, the ALJ discussed some of the medical and opinion evidence, R. 21–23, and provided some analysis to support his determination that the alleged severity of Jeffrey's symptoms was "not entirely consistent with the evidence," R. 22. He explained that treatment

11

notes showed Jeffrey "generally felt well mentally," Jeffrey was "noncomplian[t] with treatment with respect to medication," and Jeffrey's "mental impairments generally respond well to medication." R. 22–23.[7] The ALJ also gave great weight to the DDS psychologist's opinion that Jeffrey had moderate limitations in concentrating and in interacting with others. R. 23.

The ALJ did not explain why this analysis led him to conclude that Jeffrey could perform simple and routine tasks, tolerate occasional changes, occasionally interact with others, and work in two-hour intervals with breaks. Yet, "the ALJ must *both* identify evidence that supports his conclusion *and* build an accurate and logical bridge from that evidence to his conclusion." *Woods*, 888 F.3d at 694 (internal quotation marks and brackets omitted). The ALJ's analysis simply did not address how this RFC accommodated his findings that Jeffrey had several mental moderate limitations as shown by the ALJ's step three findings and crediting of Dr. Leizer's opinion. "And because [I] cannot gauge the propriety of the ALJ's RFC assessment, [I] cannot say that substantial evidence supports the ALJ's denial of benefits" in this case. *Patterson*, 846 F.3d at 662.

Thus, remand is warranted because I am "left to guess about how the ALJ arrived at his conclusions" on Jeffrey's mental RFC. *Mascio*, 780 F.3d at 637.

\*\*\*

I take no position on whether Jeffrey is entitled to disability benefits. On remand, the Commissioner must consider and apply the applicable legal rules to all the relevant evidence in the record; explain how any material inconsistencies or ambiguities were resolved at each critical stage of the determination; and, assuming Jeffrey cannot prove he was disabled based on the medical evidence alone, provide a logical link between the evidence the Commissioner found

---

[7] The ALJ did not explain the inconsistency between his findings that Jeffrey was noncompliant with taking medications and that his medications were effective in treating his symptoms.

credible and the RFC determination.

## IV. Conclusion

For the foregoing reasons, I respectfully recommend that the presiding District Judge **GRANT** the Plaintiff's motion for summary judgment, ECF No. 19, **DENY** the Commissioner's motion for summary judgment, ECF No. 21, **REVERSE** the Commissioner's final decision, **REMAND** the matter under the fourth sentence of 42 U.S.C. § 405(g), and **DISMISS** the case from the Court's active docket.

### Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14 day period, the Clerk is directed to transmit the record in this matter to the presiding United States District Judge.

The Clerk shall send certified copies of this Report and Recommendation to counsel of record.

ENTER: August 5, 2021

Joel C. Hoppe
United States Magistrate Judge